692 F.2d 447
 18 ERC 1979, 1984 A.M.C. 908
 The MIAMI VALLEY CONSERVANCY DISTRICT, Plaintiff-Appellee,
v.
Clifford ALEXANDER, Jr., Secretary U.S. Army; Lt. General
J.W. Morris, Chief of Engineers, U.S. Army; Major General
Louis W. Prep, Jr., Corps of Engineers, Col. Thomas P. Nack,
Corps of Engineers, Defendants-Appellants,
Dayton Power and Light; Board of Commissioners of
Montgomery County; City of Moraine & City of West
Carrolton; City of Dayton; City of
Piqua, Intervenors.
 No. 81-3243.
 United States Court of Appeals,
Sixth Circuit.
 Argued May 20, 1982.
Decided Nov. 12, 1982.
 
 Ann Marie Tracey, Asst. U.S. Atty., Cincinnati, Ohio, for defendants-appellants.
 Arthur A. Ames, Robert N. Farquhar, Dayton, Ohio, for plaintiff-appellee.
 Stephen F. Kozair, Dayton, Ohio, for Dayton Power and Light.
 Kenneth R. Pohlman, Asst. Pros. Atty., Dayton, Ohio, for Board of Com'rs of Montgomery County.
 Phillip B. Herron, Dayton, Ohio, for City of Moraine and City of West Carrolton.
 Stephen E. Klein, Piqua, Ohio, for City of Piqua.
 Thomas Randolph, City Atty., Dayton, Ohio, for City of Dayton.
 Before KENNEDY and MARTIN, Circuit Judges, and GUY, District Judge.*
 BOYCE F. MARTIN, Jr., Circuit Judge.
 
 
 1
 The Army Corps of Engineers appeals an order of the Southern District of Ohio enjoining it from asserting jurisdiction over the Great Miami River and certain tributaries. Under section 10 of the Rivers and Harbors Act of 1899, 33 U.S.C. Sec. 403, the Corps has jurisdiction over a river only if the river is "navigable." The District Court found that the Great Miami River and its tributaries were not navigable and granted an injunction to the Miami Valley Conservancy District. We affirm in part and reverse in part.
 
 
 2
 Jurisdiction over the following portions of the Great Miami River system is in controversy: The Great Miami River from Mile 7.5 to Mile 153.5; the Loramie Creek from its mouth to Mile 20.8; the Stillwater River from its mouth to Mile 33.0; the Greenville Creek from its mouth to Mile 23.6; and the Mad River from its mouth to Mile 26.2. Jurisdiction over the Little Miami River and its tributaries is not an issue in this case. The Miami Valley Conservancy District conceded the Corps' jurisdiction over the Great Miami River from its mouth to Mile 7.5.
 
 
 3
 The Ohio legislature created the Miami Valley Conservancy District in 1914 to control the River's periodic but severe floods. The Conservancy District's duties have been expanded to include the supervision of waste treatment and recreation on the River.
 
 
 4
 The Corps of Engineers has authority to assert federal jurisdiction over "navigable waters of the United States," under the Rivers and Harbors Act of 1899 and other Acts of Congress. In National Resources Defense Council, Inc., et al. v. Callaway, 392 F.Supp. 685 (D.D.C.1975), the District Court for the District of Columbia held that the Corps of Engineers may not alter the congressional definition of "waters of the United States" present in the "Water Act." Federal Water Pollution Control Act Amendments of 1972, 33 U.S.C. Secs. 1251-1376. As an aside, the court advised the Corps to assert jurisdiction over all navigable streams in the nation or forfeit its jurisdiction. In response to Callaway the Corps focused its attention on the Great Miami River and its tributaries. In 1979 the Corps determined that the River was navigable as a matter of law and asserted jurisdiction over the River through its power under the Rivers and Harbors Act.
 
 
 5
 The Conservancy District challenged the Corps' determination of navigability by seeking injunctive relief. The question of navigability turns on whether the river has ever been or is now used as a water highway for interstate commerce. The parties agreed that the navigability of the Great Miami River depends on whether or not it had been used for commerce prior to the construction of the Miami-Erie Canal in 1830. The parties also agreed that all River traffic was directed to the Canal after its construction. The District Court examined evidence of River use by Indians and fur traders, by military expeditions, and by commercial traders with flatboats and keelboats. In conclusion the court found that the Great Miami River and its tributaries "are not now nor have they ever been navigable streams within the meaning of section 10 of the Rivers and Harbors Act of 1899." Accordingly, the injunction issued.
 
 
 6
 The earliest and most frequently cited definition of navigability appeared in The Daniel Ball v. United States, 77 U.S. (10 Wall.) 557, 563, 19 L.Ed. 999 (1871). The Supreme Court held:
 
 
 7
 Those rivers must be regarded as public navigable rivers in law which are navigable in fact. And they are navigable in fact when they are used, or are susceptible of being used, in their ordinary condition, as highways for commerce, over which trade and travel are or may be conducted in the customary modes of trade and travel on water.
 
 
 8
 (emphasis added).
 
 
 9
 Subsequent cases have refined the definition of navigability. A river is navigable if it can be made useful through reasonable improvements. United States v. Appalachian Electric Power Co., 311 U.S. 377, 409, 61 S.Ct. 291, 300, 85 L.Ed. 243 (1940). The use of navigable streams may be limited to travel during seasonal water level fluctuations. Economy Light and Power Co. v. United States, 256 U.S. 113, 122, 41 S.Ct. 409, 412, 65 L.Ed. 847 (1921). Moreover, a river is still navigable despite "occasional natural obstructions or portages...." Id. However, where commercial use or susceptibility of use is "sporadic and ineffective," the river is not navigable. United States v. State of Oregon, 295 U.S. 1, 23, 55 S.Ct. 610, 619, 79 L.Ed. 1267 (1935). A waterway is not navigable when "its use for any purposes of transportation has been and is exceptional, and only in times of temporary high water." United States v. Rio Grande Dam & Irrigation Co., 174 U.S. 690, 699, 19 S.Ct. 770, 773, 43 L.Ed. 1136 (1899).
 
 
 10
 The Supreme Court has emphasized repeatedly that a navigable waterway of the United States must be "of practical service as a highway of commerce." Economy Light, 256 U.S. at 124, 41 S.Ct. at 413. A navigable river is one of "general and common usefulness for purposes of trade and commerce." Oregon, 295 U.S. at 23, 55 S.Ct. at 619. The Rivers and Harbors Act protects "the Nation's right that its waterways be utilized for the interests of the commerce of the whole country." Appalachian Electric, 311 U.S. at 405, 61 S.Ct. at 298.
 
 
 11
 When it is remembered that the source of the power of the general government to act at all in this matter arises out of its power to regulate commerce with foreign countries and among the states, it is obvious that what the Constitution and acts of Congress have in view is the promotion and protection of commerce in its international and interstate aspect, and a practical construction must be put on these enactments as intended for such large and important purposes.
 
 
 12
 Leovy v. United States, 177 U.S. 621, 633, 20 S.Ct. 797, 801, 44 L.Ed. 914 (1900) (emphasis added).
 
 
 13
 Under the historical use test of navigability a river is "indelibly navigable." State of Oklahoma ex rel. Phillips v. Guy F. Atkins, 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487 (1941). That is, a river is navigable as a matter of law if it has ever been navigable. For a river to be considered a navigable water of the United States, it is sufficient that the river has been used as a commercial highway even though it no longer is or can be used as such.
 
 
 14
 The test of navigability has been stated and restated by the federal courts for the last one hundred years. Navigability has been defined in countless ways but its essential elements have remained constant. The District Court here properly identified these elements: A navigable waterway of the United States must (1) be or have been (2) used or susceptible of use (3) in the customary modes of trade and travel on water (4) as a highway for interstate commerce.
 
 
 15
 The Corps here challenges all the factual and legal conclusions of the District Court. A review of the evidence leads us to agree with the Corps that the District Court erred in holding that the Great Miami River from Mile 7.5 to Mile 117, near Piqua, is not navigable. However, the record clearly supports the District Court's holdings that the tributaries of the River and the River from Mile 117 to Mile 153.5 are not navigable.
 
 
 16
 The District Court counted sixteen "instances" of flatboat travel on the Great Miami River from 1800 to 1830. However, the court found that flatboat travel was "at best sporadic, limited to periods of highwater, and only on a seasonal basis." The court also determined that citizens of the area would not have invested money in the Miami-Erie Canal if the River had been navigable by customary modes of trade and travel.
 
 
 17
 These factual findings do not present an accurate picture of the trial evidence. Official records from the Port of New Orleans report flatboats arriving from the Great Miami River in each year from 1800 to 1830. Fleets containing as many as seventy-nine and one hundred thirty flatboats were sighted on the Great Miami River. Testimony also demonstrated that the high water on the River, necessary for downstream travel, lasted for several months in the spring. The average size of flatboats on the River was seventy feet long and twenty feet wide with a three-foot draft when fully loaded. Flatboats on the Great Miami River were the same as most flatboats floating downstream to New Orleans by way of the Ohio and the Mississippi Rivers.
 
 
 18
 Furthermore, the District Court relied heavily on the construction of the Miami-Erie Canal to support its conclusion that the River was not navigable. The court concluded that the citizens of southwestern Ohio would not have built the Canal if the River had been navigable. Unfortunately this conclusion is flawed. Before the Canal was built, traders were forced to rely on the River for transportation. There was abundant evidence that commercial traders used the Canal after its construction because it was a better highway for commerce than the River. The fact that people used the Canal rather than the River says only that the River was less navigable than the Canal. It says nothing about the navigability of the River in absolute terms. The existence and use of the Canal after 1830 does not rebut proof of the River's navigability before 1830.
 
 
 19
 A more complete statement of the evidence produced at trial shows that the elements of navigability are present. Like many larger rivers in the Mississippi River system, the Great Miami River afforded predictable albeit not always dependable use during spring high water fluctuations. Downstream flatboat travel was the customary mode of travel in the early 1800's and the Great Miami River was no exception. Finally, the Great Miami River was used as a commercial highway to float goods from southwestern Ohio to New Orleans. The record establishes inescapably that the Great Miami River was navigable as a matter of law from its mouth to Mile 117.
 
 
 20
 The Corps has failed to prove that the Great Miami River from Mile 117 to Mile 153.5 and its tributaries are navigable as a matter of law. Evidence of commercial navigation on the rivers in southwestern Ohio was primarily of a general and non-specific character. The District Court did not err in its factual or legal conclusions that the upper portion of the River and the tributaries were not navigable.
 
 
 21
 The Corps' determination of navigability of the Greenville Creek and the Great Miami River from Mile 117 to Mile 153.5 rests on early military expeditions. In the late Eighteenth Century military expeditions transported supplies up the rivers to several forts in southwestern Ohio. As many as thirty-two men could have been required to pull a loaded flatboat upstream. Military use of the rivers through great quantities of manpower was not the customary mode of travel for settlers and farmers of the time. This use of the rivers by military expeditions does not prove the susceptibility of use for interstate commerce. The Great Miami River from Mile 117 to Mile 153.5 and the Greenville Creek are not, therefore, navigable waters of the United States.
 
 
 22
 Evidence to support navigability on Loramie Creek consisted of Dr. Johnson's testimony for the Corps. Dr. Johnson testified that two keelboat lines were established on the Great Miami and Maumee Rivers in 1809 and 1819. He produced no specific instances of keelboat use on Loramie Creek nor of the success of the lines. Evidence suggested that these keelboat lines included portages of six, twelve, or one hundred fifty miles. Additionally, Dr. Johnson admitted that keelboat commerce on these rivers was "limited." The District Court concluded from this sparse record that keelboat use was "sporadic," "minimal," and "uniformly unsuccessful." Without specific evidence of successful commercial navigation on the Loramie Creek, by keelboats or otherwise, we cannot find that the Creek was used as a highway for interstate commerce. The Loramie Creek is not a navigable waterway of the United States.
 
 
 23
 The Corps demonstrated at trial no specific instances of navigation on the Mad and Stillwater Rivers. The Corps' claim of navigability rests in part on Eighteenth Century Indian and fur trader use of rivers throughout Ohio and the Midwest. For additional support the Corps points to the extensive use of flatboats on the Great Miami River from 1800 to 1830. Without specific evidence of commercial use of the rivers or their susceptibility of use, like the District Court, we decline to hold that the Mad and Stillwater Rivers are navigable as a matter of law.
 
 
 24
 In summary, we affirm the District Court's judgment that the tributaries of the Great Miami River are not navigable under the Rivers and Harbors Act of 1899. However, we reverse the District Court's determination regarding the River itself. We hold the evidence compels the finding that the Great Miami River from its mouth to Mile 117 was a highway for interstate commerce before 1830. Hence, this portion of the River is a navigable water of the United States. And because this portion of Great Miami River is navigable as a matter of law, the Corps of Engineers may assert jurisdiction over it under the Rivers and Harbors Act of 1899.
 
 
 25
 Judgment reversed in part and affirmed in part.APPENDIX
 
 
 26
 NOTE: OPINION CONTAINS TABLE OR OTHER DATA THAT IS NOT VIEWABLE
 
 
 
 *
 Honorable Ralph B. Guy, Jr., United States District Judge for the Eastern District of Michigan, sitting by designation